23-5113. Council you may proceed. Good morning your honors I'm Josh Lee from the Colorado Federal Public Defender's Office and I represent Hunter Hobbs. This appeal is from a trial that ended with Mr. Hobbs being convicted of felony murder. His primary claim on appeal challenges the admission of highly inflammatory testimony that Mr. Hobbs mockingly imitated the dying breaths of one of the victims. Which wasn't objected to. That's right we're on plain error and this testimony was plainly inadmissible because its probative value was very slight and it came nowhere close to justifying the extraordinary amount of unfair prejudice that it inflicted. Prosecutors emphasized this mocking testimony all three times they spoke to the jury and made it some of the last things that the jurors heard. Could I just ask you in terms of the way you're framing this issue the word mimicking is used in the briefs there's mocking used in the briefs are those the same thing? I think that they are. Okay and the second one is there's testimony about the mimicking or mocking on the one hand and then there's the reenactment piece of it. Right. Are you challenging those separately or together? I think both. I think that the mocking testimony on its own violated rule 403 and plainly so and the reenactment on its own violated rule 403 and plainly so and when you put them together. I suppose that the reenactment wouldn't have made any sense without the testimony as a foundational predicate. That's true although you know what I would essentially say is the mocking testimony violated rule 403 but if you think that that somehow maybe just barely passed it the reenactment just like took it over the top. I mean so you know I think that the government says that this testimony wasn't really all that unfairly prejudicial I just don't see how that's possible. Ms. Darden not only claimed that Mr. Hobbs ridiculed Mr. Collier's dying breaths but then made raspy gasping noises in the courtroom that purported to be the dying breaths of Mr. Collier and this was unfairly prejudicial because it surely would have aroused the jury's emotions it would have induced sympathy for Mr. Collier and it would have provoked an instinct to punish Mr. Hobbs. But it's what the defendant said told his girlfriend when he came home from the acts that he had committed. He's the one that told her and mimicked the death throes of the deceit. It's not like somebody made it up. No but you know whether or not whether or not a fact is true whether or not testimony is true I don't think goes to whether it violates rule 403. Well okay 403 is pretty broad no objection was made and I'm wondering why the defender's office is missing all of these objections case after case after case. So I can't speak to I'm not sure that this was the federal defender's office but regardless I think that if the question is how could the testimony have been that prejudicial if defense counsel didn't object well when it comes to the mocking testimony we have it in black and white. We can see that it was prejudicial so I think the absence of an objection under these circumstances. Just repeating what the defendant told his girlfriend how is that prejudicial other than showing the true character of this defendant? Well I think that that is one of the reasons that is prejudicial because it characterizes the defendant as an evil person. Well he was and he told his girlfriend exactly what she repeated in court so where is the prejudice? I think that you're articulating the prejudice so what the government needed to do is to you know prove these elements like here you know prove that he committed this. Carjacking and murder felony murder. Right and what they can't do which I tend to think is what you're suggesting is to say well he mocked the victim's death. He's evil therefore he's more likely to have done what we claim. That's the reason it's prejudicial. Well how can they be prejudiced? The guy is dead to rights. He carjacked, he killed this lady, he made fun of her dying breath. So they repeated that in court. How is that prejudicial? So I'm glad that you brought this up if you're going to the third prompt because the government didn't only have to prove that he killed this person. They also had to prove that he did so in the course of a robbery and as a result of a robbery. The only real evidence that they had that this was arose from a robbery and was a result of a robbery was the uncorroborated testimony of a co-defendant who was cooperating with the government in exchange for leniency. And here's why this is important. The in the course of a robbery element was what allowed the government to get first degree murder and a life sentence. So even if the government had him dead to rights on being out there and shooting Mr. Collier, they don't get a first degree murder conviction and a life sentence without proving the robbery. The evidence of the robbery was weak. But they also had the burden of proof on the killing. I mean, I understand what you're trying to say here, but the mimicking testimony, I appreciate that you're going to press the prejudice side of this, but it's also probative. The testimony that he mimicked is probative that he was there, that he knowingly and voluntarily participated. And isn't this just this is classic 403 balancing, isn't it? Probative value, probative value substantially outweighed. And not only that, you've got to get not only to error, you've got to get to plain error. How do you get to plain? Well, let me take those one at a time. First of all, when it comes to probative value, this court's case law is clear that you have to discount the probative value if the point is already adequately established by other evidence. That's from the Wood case. Yeah, but there's plenty of cases that show that the government is entitled to present the full narrative of the case and what happened. And this, assuming that the witness was truthful about the mimicking, it happened. Yeah, but the mimicking is not itself part of the crime. But it's probative. It's corroborative. All right, let me give you, I think, the best case of this is the Wood case. So in the Wood case, the prosecution had to prove that the defendant doctor, who was a doctor, killed his patient with potassium chloride. And one of the ways they proved that is they had an expert witness that said, we use this to execute criminals and to kill animals, to euthanize animals. And this court says, wait a second. You already proved the properties of potassium chloride before you got into all of this inflammatory stuff about executing criminals and killing animals. It was adequately proved with other evidence. And that's what we have here. There was no question that he was out there at Hickey Creek Park. And the jury, before this mocking testimony, from the exact same witness, they had already heard that he confessed to shooting Mr. Collier. So the way that it went was like this. The prosecution's witness, Ms. Darden, said, Mr. Hobbs came home and he confessed to me how he shot and killed Mr. Collier. So the jury had already heard better evidence from the same witness. And then it went on and elicited this mocking testimony, which was totally unnecessary and had the primary effect of characterizing him as a fundamentally evil person and arousing the jury's instinct to punish. But your argument's sort of like it's a spillover prejudice on the other charges. On the killing itself, do you think it had to be excluded on that? I'm not sure I understand the question. Well, a few minutes ago, you said it's significant. This is significant relative to these other cases. Oh, no. No, no. Sorry. He was charged with and convicted of felony murder. Right. Right. So it's inadmissible. You know, the government's, and I think what you were suggesting, is that, well, it goes to the killing. It goes to him being out there. Well, it's totally cumulative for that. And then you ask, how is it prejudicial? Well, the government's case on the robbery, the government's case that the killing was perpetrated to commit a robbery was weak. And then the danger is the jury's going to think, this is a fundamentally evil person. He needs to be punished. OK. I understand. Yeah. And they find themselves more persuaded than they otherwise would have been. So let's get to playing. Right. I mean, typically, we'd like to see a Supreme Court or Tenth Circuit case. But as I understand your argument, it's more of an obviousness argument. It is. And, you know, this court does have plenty of cases. One of them that I cited in my briefs is the Jones case that says evidence can be plain based on a rule of evidence by itself. So what you have is it just comes down to the question is, you know, it's an established rule that you should exclude evidence if its prejudicial effect substantially outweighs its probative value. So the question is, is it clear and obvious that the prejudicial effect of this evidence outweighed its probative value? And it is. The prejudicial effect was tremendous. The connection between anything that the prosecution legitimately had to prove was tenuous at best. And for its probative value, it was totally cumulative of other evidence. And then I also— Is there a reasonable probability that the result would have changed? Yes, and for two reasons. Number one, as I have said, to get convictions on the most serious counts, the prosecution had to prove that the robbery was a reason for the killing and the evidence of the robbery was weak. So that's number one. Number two is we have weak evidence on this essential element, and then the prosecution repeatedly exploits this plainly inadmissible evidence. They bring it up every single time they speak to the jury, including twice in their rebuttal closing. So the reason it affects substantial rights is the evidence on an essential element was weak. This evidence, which was plainly inadmissible, was highly safe. Well, except you admitted at the outset that there was, and this is a quote, there was significant corroborating evidence of Mr. Blount's testimony that Mr. Hobbs was involved in the killing of Mr. Davis. Exactly, I agree with that. Okay, and so if there was ample evidence otherwise, how is this particular evidence going to change the bottom line? Because this is a felony murder case. The prosecution cannot get a conviction without proving that the killings happened during and as a result of the robbery. He admitted it. He never admitted that it occurred during and as a result of a robbery. Thank you. I've reserved the remainder of my time. Thank you, counsel. Good morning, and may it please the Court. Jenny Ellickson for the United States. Mr. Hobbs's plain error challenge under Rule 403 lacks merit, and this Court should reject it. First, the district court properly admitted this evidence. Second, there was no clear or obvious Rule 403 error. And third, it did not affect Mr. Hobbs's substantial rights. I can walk through each of those. Now, first, I'd like to talk about the probative value of this evidence. So this went directly to Mr. Hobbs's state of mind and how he felt about the crimes that he had just committed at Hakey Creek Park. Those crimes included the murder, included the robbery, and it included his working in tandem with his best friend, Denham Blount, who killed one of the two victims. The government had to prove that Mr. Hobbs knowingly and voluntarily entered into a conspiracy with Mr. Blount to rob the victims. The government had to prove it was not just felony murder. It was also killing with intent to obstruct justice, that Mr. Hobbs acted with that intent, wanting to cover up the robberies. And also, with respect to the killing of Mr. Kelly Davis, which was a killing that Mr. Blount carried out, the government could prove that threat by showing that Mr. Hobbs aided and abetted that murder, which again required showing that he intended to help Mr. Blount in committing that crime. So all of these things go directly to how Mr. Hobbs was feeling and what his state of mind was. How does his mocking of the victim go to his intent on any of those items? Your Honor, it shows— In particular, how does her reenactment of his mocking of the victim go to any of those items? So I'll take first the testimony and then the reenactment. So with respect to the testimony, it shows his attitude after the murders. And this is relevant partly because of the defense that Mr. Blount was trying to put forward at trial. He was trying to paint a picture of Mr.—sorry, Mr. Hobbs was trying to paint a picture of Mr. Blount being kind of an angry person, who he was intimidated by, that he was there but not wanting to participate. This is all refuted by the fact that right after the murders, when they come back to the house, Mr. Hobbs is telling his girlfriend, you know, relishing the story of what they had done. And it refutes the idea that he was sort of an unwilling participant or, you know, not happy to have been a part of it. It shows he was quite happy to be part of it. And this was important—the fact that he mimicked, rather than just describing the murders, sheds less light on his state of mind than the fact that he then kind of reveled in the violence that he had just committed. And with respect to the reenactment, I think that that—you know, if you look at the cold record, there was no objection. So frankly, we don't know exactly what she did. All it says is that the government, you know, asked, can you do it for us? And she complied. Well, defense counsel said he couldn't hear. Apparently, it was hearing impaired. But as I recall, defense counsel said—I kept repeating—he couldn't hear her. And then so the government—or somebody asked her to do it again. Now, with respect to the demonstrations, this was with respect to some of her earlier testimony. Because he couldn't hear it. And he even said, I don't really want her to, but I can't hear it. Well, that was with respect to the testimony and not with respect to the reenactment. But I think, you know, whether or not—with respect to the fact that it's a plain error, it's a question of not just, you know, should the defense attorney have objected, but should the district court have sua sponte, observing this, you know, said, this is something that is, you know, clearly and obviously outrageous that the jury should not hear. There's no allegation that the district court had a hearing issue. The district court witnessed it and did not—you know, the district court certainly didn't see this as clear and obvious. Was it obviously cumulative? She'd already talked about it. You know, I think— And we have a reenactment. Was that—the counsel's argument is that it was needlessly cumulative. I think, Your Honor, it's a little hard to tell from the transcript again because of not knowing exactly what happened. But if you look at Ms. Darden's testimony leading up to the reenactment, it had been a little bit, I think, not necessarily clear for the jury to parse because she said—first she said, well, it was both serious and, you know, joking, but more serious, but then she said it was more of a mocking. She was having trouble articulating what exactly this imitation entailed, and so the government asked her to do it. And as soon as she did it, the questions ended. There was no further discussion in her testimony about it until, of course, cross-examination when there were further questions by defense counsel. But I think based on that cold record, it indicates that her imitation was clarifying. And I think this court also has to give it its minimum prejudicial value and so has to assume that it was short and relatively uninflammatory. And it was, you know, to the extent that it was cumulative of the earlier testimony, that also just shows that it actually didn't have a significant additional potential prejudicial value. The jury had already heard her describe that Mr. Hobbs had mocked the victim's dying breaths, and the jury had previously heard Mr. Blount's testimony describing in detail how the victim had been trying to raise himself up and was, you know, the dying breaths of the victim in that respect. And so this was all the idea that it would be the demonstration would kind of arouse some special, you know, feeling in the jury that wasn't already aroused by that other evidence that, you know, was. Well, at a minimum, it seems that the government thought it was pretty important since they repeated it three times. Well, the government actually only referenced the demonstration once, and that was briefly in closing argument. But also referenced two more times, didn't they? In the opening, yes. The reference.  Yes, referenced in the opening in rebuttal. And that's because it goes to the probative value of this evidence. This evidence was important. It showed Mr. Hobbs' attitude towards the crimes. It showed how he was feeling. And, you know, as the government explained in its closing argument when it referenced this evidence, one of the things that was kind of striking about these crimes is that they seemed in so many ways to be senseless. You know, there was so little, you know, there was no personal grudge. There was very little to gain from these crimes. And I think that made it, you know, potentially more of a challenge for the government to be able to persuade the jury that Mr. Hobbs actually was kind of, had joined in Mr. Blount in doing these things because why would you do these, you know, commit these crimes for so little? Why would you, you know, he had multiple guns. Why would he help Blount steal another gun? Why would he put himself in this situation? And the fact that Mr. Hobbs seemed to have enjoyed it, I think, helps to answer the question of why he would have, you know, voluntarily and intentionally participated in these seemingly low-stakes crimes. And that was what the government was explaining when it used this evidence in its presentations to the jury, that this helps to explain, and the government said this in the closing argument, one of the things that makes this kind of a challenging case is that the first thing I think you're going to think about is why did he do these things? And the government wanted to answer that question to clear up any confusion about whether he actually did do those things. If the jury thinks it doesn't make sense for him to do these things because he didn't have a grudge against the victims, he stood so little to gain, the government needed to show that Hobbs was getting something out of it. You know, and so I think that it goes directly to the state of mind. It also, importantly— Or he was just a horrible person, it seems that's what they were trying to show. No, no, no, no. That's definitely— What was he getting out of it? That he seemed to enjoy it. And that is borne out by the evidence. The evidence showed that he was joking about the murders after the fact, not just with Darden, but with Blount as they were driving away the next morning when he talked to the friend who gave him a ride. So the bottom line is you're saying this is state of mind evidence? Yes, and that state of mind that goes directly to his intent. And it undercut his defense, which was that he lacked the mens rea to commit these crimes. Well, how do you respond to Mr. Lee's argument about weakness of evidence on the robbery? So I definitely disagree with the idea that the robbery evidence was weak. First of all, so there was Blount's testimony, which was corroborated in many respects throughout both of the sets of crimes, both the attempted carjacking and the murders and robbery at Hickey Creek Park. There was extensive corroboration for that. But there was specific corroboration for the robbery piece of it. So there were the robbery charges arrested on three items. First, it was the gun that they stole from Mr. Davis, and it was the car that they drove off with after the robbery and the cell phones that were left in the car. They robbed, they stole all of those things. So with respect to the gun, as soon as they came back from the murders when they were with Darden in the apartment, Darden was actually on a Snapchat call at the time with Blount's girlfriend. And Blount took the phone from Darden, and he and Hobbs then showed off two handguns. And Blount's girlfriend said that they seemed giddy and proud to have them. The evidence showed that there was only one handgun that was actually fired and used that night at Hickey Creek Park. It was a handgun and a shotgun, and that they actually, that Hobbs had to reload the handgun, and Blount had the shotgun, and he was worried about whether he had enough bullets. So it seemed like there was no other gun that they had with them, except then they stole Davis's gun. And that was corroborated by the fact that they were showing off two handguns. The fact that that witness testified that they seemed proud to have them, I think the jury would reasonably see that as showing off a murder weapon and showing off the spoils of the murder. So that's the corroboration with respect to the gun. With respect to the car, there was surveillance video presented that the victims got into the backseat of the, sorry, the victims were driving a car. The defendants got into the backseat after arranging to meet them. There were Facebook messages that showed how they had arranged to meet them. They drove together to an isolated park, and Blount testified about what happened, but it was corroborated by the fact that shots rang out, witnesses heard shots, the police responded, they found the bodies there, they found no car. Instead, the next day they found the car located within a block or so of the apartment where Hobbs and Blount were staying. The car had been burned. So if you look at this evidence, it shows they get in the car, they go to an isolated park, clearly their plan to leave the park is to leave in the car. And in fact, they ordered the victims out of the car, they shot them outside the car, they didn't shoot them inside the car, which again corroborates the fact that they were planning to leave in that car. They didn't want the car damaged. And then, of course, the car being found exactly where Blount said, burned in exactly the way that Blount described. The phones were in the car. I think that was maybe less of a focus of the robbery. The robbery was really focused more on taking the gun and then leaving in the car. But certainly I think the jury would look at this evidence and say, well, obviously if they're stealing the car, they're intending to steal everything in the car. And certainly they knew that at least Kelly Davis had a phone because they had been communicating with him on Facebook until the very moment, basically, when they got in the back seat of the car. So they knew he had the phone as well. So all of that together, the robberies were heavily corroborated. Just pulling back also, I think if you look at this, even if this court thinks that the Rule 403 analysis is a hard call, that's not enough to show clear and obvious Rule 403 error. What you need is for it to be so obvious under current law that the district court was derelict in allowing this evidence to come in. And there is no case that suggests that when the defendant is in the process of confessing to a crime, within an hour or two after it occurred, that the district court has an obligation to interrupt and stop any testimony that suggests that the defendant had a lack of remorse about what he had done or that the defendant was being callous about his crimes. There is no case that I'm aware of that suggests that that kind of evidence is clearly and obviously inadmissible under Rule 403. If the court has other questions, I'm happy to answer them. We'll rest on the briefs and ask the court to affirm. Thank you. Thank you, counsel. A key problem with both the government's merits argument and its substantial rights argument is it does not pay adequate attention to what the actual elements of the crimes were. So, first of all, the elements of the crime determine what evidence is material because the evidence has to be probative of a material fact, a fact that the law makes material. The defendant's attitude or feelings about what happened at Hakey Creek Park, that's not a mens rea element. The mens rea elements are, one, intent to rob, and two, intent to obstruct justice. The fact that a defendant behaves callously about having killed someone doesn't say anything about why the killing happened. It does not indicate that the killing was done to perpetrate a robbery or to obstruct justice. Also, the government says, well, we said a lot of things in closing about motive, and that's what makes it relevant. But the government's closing argument does not make evidence material. The elements make them material. And this callousness mocking testimony just does not go to what the government actually had to prove. Doesn't it go to the willingness to participate in the murder? That was not an element. It's not an element because the government chose not to charge this as intent to kill murder. They chose to charge felony murder, which had the two mens rea elements that I indicated. Well, you're not suggesting, though, that any evidence showing willingness to participate should be deemed irrelevant? No, I don't think it has to be irrelevant. I think it's not very probative for the reasons that I mentioned. Could I just ask you on the reenactment, there really isn't much we have to work with from the transcript. And district judge was there, could see the whole thing, could make the assessment and all the rest. Defense didn't make any proff or extra record that would assist us on appeal. What are we supposed to do with that? I think it's so you have to ask like what the reasonable probative value and prejudicial effect would have been. And I think that we can infer that filling the courtroom with what purport to be the raspy, gasping, dying breaths of a murder victim is going to be highly prejudicial. Thank you. Thank you, counsel. Thank you both for your arguments this morning. Case will be submitted. Counsel are excused.